## Mortgages Insured by Federal Housing Administrator

Department of Justice. Opinion to Hon. Luther A. Harr, Secretary of Banking.

MARGIOTTI, Attorney General, October 4, 1935.—Your request for our advice relative to bonds secured by mortgages insured by the Federal Housing Administrator raises the following specific questions:

1. Are the limitations on the aggregate amount which

a bank or a bank and trust company may lend upon, or invest in, bonds and mortgages, as set forth in section 1012 of the Banking Code of June 15, 1933, P. L. 624, as amended by the Act of June 11, 1935, P. L. 306 (no. 140), applicable to bonds and mortgages which are insured by, or for which a commitment to insure has been made by, the Federal Housing Administrator pursuant to the provisions of the National Housing Act?

2. May an institution receive such a bond and mortgage or bonds and mortgage and sell one or all of such bonds to other institutions, corporations or individuals and continue to hold the mortgage securing said bond or bonds, and collect the interest thereon and otherwise service the obligation?

3. Are the limitations upon mortgages to one corporation or person, as set forth in section 1006 of the act, applicable to bonds secured by mortgages insured or for which a commitment to insure has been made by the Federal Housing Administrator?

Mortgages on real estate may be insured in accordance with the provisions of the National Housing Act of June 27, 1934, 48 Stat. at L. 1246. This act is divided under three titles. Title I has to do with housing renovation and modernization. Title II has to do with mutual mortgage insurance. Title III has to do with national mortgage associations. The matter pertinent to our present inquiry will be found under Title II, which provides for the insuring of mortgages. Under the provisions of this title, the Federal Housing Administrator is authorized to insure and to make commitments for insuring mortgages upon real estate. In the event of a default in an insured mortgage, the administrator issues debentures having a total face value equal to the value of the mortgage and a certificate of claim covering the amount due on the mortgage which has been insured, or for which a commitment to insure has been made, if and when the holder of the mortgage, having acquired title to the property covered by the mortgage, conveys the same to the administrator.

These debentures bear interest at a rate to be determined by the administrator and are a liability of the insurance fund only, except that debentures issued in exchange for mortgages insured prior to July 1, 1937, shall be fully guaranteed as to principal and interest by the United States.

The principal characteristics of mortgages insured by the Federal Housing Administrator are as follows:

1. All insured mortgages must be written upon standard mortgage, bond and warrant forms supplied by the Federal Housing Administrator.

2. Individual mortgages must be secured upon urban residential property and may not exceed 80 percent of the appraised value of the property, or a maximum of $16,-000 face amount.

3. Mortgages may be drawn for any period up to and including 20 years, but must be entirely amortized over their life.

4. Mortgages to be eligible for insurance shall have, or be held by, a mortgagee approved by the administrator as responsible and able to service the mortgage properly.

There are two means contemplated under the National housing program for distributing the insured mortgages among financial institutions and investors. One is for banking institutions to take and hold the bonds and insured mortgages for their own account. The second contemplates that a banking institution will take the original mortgage loan, receiving a number of separate and distinct bonds split into convenient denominations for the purpose of selling these bonds to other banking institutions and investors. In the latter case the banking institution which originally takes the bonds and mortgage securing the same sells the bonds to other investors and continues to hold the mortgage and collect the interest and payments on account of principal for the benefit of the bondholders.

The office of the district director of the Federal Hous-

ing Administrator for the Philadelphia District advises that a market has developed for bonds secured by mortgages insured by, or for which a commitment to insure has been made by, the Federal Housing Administrator among insurance companies and banks as well as individual investors. The Pennsylvania State Workmen's Insurance Fund and the State Employes' Retirement Fund have bought large amounts of these securities. The RFC Mortgage Company, which is a subsidiary of the Reconstruction Finance Corporation and authorized to do business in this State, has issued a statement that it will purchase insured mortgages which are liens upon newly erected homes.

The insured mortgages are available for use as collateral security for loans from Federal home loan banks to the extent of 90 percent of their value. The Reconstruction Finance Corporation has announced that it will consider loans secured by insured mortgages up to 90 percent of their value. The Federal reserve banks have been given authority by act of Congress to lend on the security of such obligations.

Title III of the National Housing Act authorizes the establishment of National mortgage associations for the purpose of purchasing and selling mortgages on real estate. It is not contemplated that such companies will be established because of the favorable market for bonds and mortgages insured by the Federal Housing Administrator now existing.

It is apparent that there is now an active market for bonds secured by mortgages insured under the provisions of the National Housing Act and that such bonds can be readily bought and sold on the market.

The Pennsylvania Banking Code of May 15, 1933, P. L. 624, has been amended in several respects by the Act of June 11, 1935, P. L. 306 (no. 140), to permit institutions governed by the act to apply for and secure insurance of mortgages as provided by the National Housing Act.

1. Section 1012 of the Pennsylvania Banking Code, as amended, provides:

"Loans on and Investments in Bonds and Mortgages and Judgments of Record.—A. A bank or a bank and trust company shall have the power to lend on the security of, or invest in, bonds secured by mortgages upon real property, but it shall lend upon, or invest in, only such bonds and mortgages as (1) are first liens on unencumbered improved real property, including improved farm land, situated within the Commonwealth, and (2) do not exceed two-thirds of the actual value of such real property, and (3) become due within ten years after the making of such loan or investment, unless amortized in equal annual installments over a period not exceeding fifteen years after the making of such loan or investment. Any building which is upon, and is included in the valuation of, such real property shall be insured against loss by fire, to the benefit of such bank or bank and trust company, by the borrower or mortgagor during the term of the bond, in a company which is authorized to do business in Pennsylvania and is approved by the bank or bank and trust company making the investment. It shall be lawful for a bank or bank and trust company to renew such policies, at the expense of the borrower or mortgagor, from year to year, or for a longer or a shorter period, not, however, exceeding the term of the obligation, in case he shall fail to do so. All necessary charges and expenses paid by such bank or bank and trust company for such renewals shall be paid by such borrower or mortgagor. In case such borrower or mortgagor shall refuse, upon demand, to pay such charges and expenses, they shall be added to the amount secured by the mortgage, and shall, together with interest from the date of the payment of such charges and expenses, constitute a lien upon the property so mortgaged. All expenses of searches, examinations, certificates of title, or appraisal of actual value, and all expenses of drawing and recording of papers, shall be paid by such mortgagor or borrower. The actual value of

the real property shall be determined by two reputable persons, especially familiar with real property values in the vicinity of the particular property to be appraised, selected from or approved by the board of directors. They shall inspect the property, and shall state, in writing, that the actual value of the real property inspected, to the best of their judgment, is as stated. Such report shall be filed and preserved among the records of the bank or bank and trust company. The restrictions imposed by this section shall not apply to public utility, railroad, or industrial bonds, or other securities, commonly known as investment securities, although such bonds may be secured in whole or in part by a mortgage upon real property.

"B. A bank or bank and trust company shall have the power to lend on the security of, or invest in, judgments of record which are first liens on unencumbered real property situated within the Commonwealth, to the amount of fifty per centum of the actual value of such property, under the same circumstances and subject to the same conditions as are established by this section in the case of loans on the security of, or investments in, bonds secured by mortgages upon real property.

"C. The aggregate amount of all loans and investments made by virtue of this section shall not at any time exceed twenty-five per centum of the unimpaired capital and twenty-five per centum of its unimpaired surplus, or fifty per centum of the total time deposits of such bank or bank and trust company, at the option of the bank or bank and trust company.

"D. The limitations, herein prescribed, in respect to the percentage of the actual value of the property upon which a bank or a bank and trust company may lend on the security of, or invest in, bonds secured by mortgages upon real property, the term for which such loan may be granted, shall not apply to bonds secured by mortgages which are insured by, or for which a commitment to insure has been made, by the Federal Housing Administra-

tor pursuant to the provisions for mutual mortgage insurance in title two of the National Housing Act, for the purpose of financing the construction or purchase of dwellings and similar residential property, and the refinancing of mortgages."

The restrictions imposed by this section by its express terms do not apply to securities commonly known as investment securities. This exception from the provisions of the section, which deals exclusively with bonds and mortgages and judgments secured by liens on real estate, indicates the thought of the framers of the act that such obligations may be classed as investment securities. The term "investment securities," although in common use, has a more or less technical significance. The words themselves indicate income-producing obligations, the fulfilment of which is made certain or sure. A bond and mortgage comes within such meaning. As commonly used, however, the term means securities which may be bought and sold on the market: Robotham v. Prudential Ins. Co., 64 N. J. Eq. 673, 686. The word "market" has a variety of meanings. As used in this connection, however, it means the exchange of goods for money and implies the existence of a supply and demand. Since there is an existing supply and demand and market for the bonds secured by mortgages insured by the Federal Housing Administrator, such bonds may be classed as investment securities, and banking institutions do not have to observe the limitations prescribed by section 1012 when investing therein.

Furthermore, the insuring of the mortgage gives to it a standing as security not possessed by the usual mortgage. The debentures issued in exchange for mortgages insured prior to July 1, 1937, are fully guaranteed as to principal and interest by the United States. All other insured mortgages are secured by the mutual mortgage insurance fund. Bonds secured by insured mortgages have the security of the credit of the United States, or of the mutual mortgage insurance fund, as the case may be,

in addition to the lien upon real estate. This additional security and the rights incidental thereto place the bonds secured by such mortgages in a class not included within the limitations and restrictions set forth in section 1012.

The provisions of section 1012, except subsection D, were a part of the Banking Code of 1933 as originally enacted. Subsection D is added by the amending Act of June 11, 1935. Subsection A contains certain requirements as to bonds secured by mortgages upon real property. Subsection C contains limitations as to the aggregate amount of loans and investments made by virtue of this section (including bonds secured by mortgages on real estate and judgments of record) which may be made by an institution. As has been noted, these restrictions and limitations do not apply to bonds secured by mortgages insured by, or for which a commitment to insure has been made by, the Federal Housing Administrator, because they fall within the class of investment securities. The amendment of 1935 relates only to the requirements as to bonds and mortgages set forth in subsection A. This is not a conclusive admission by the legislature that the restrictions and limitations of the Act of 1933 originally covered such loans and investments that may be made by an institution as set forth in subsection C. The intention of the legislature being clear and express that these restrictions and limitations do not apply to the loans and investments under consideration, canons of construction applying inferences and presumptions as to what the intention of the legislature may have been cannot be resorted to in order to defeat the plain intent of the act.

2. Section 1001 of the Pennsylvania Banking Code of 1933, defining the powers of banks, bank and trust companies, and trust companies, provides that such institutions shall have power:

"(4) To lend money either upon the security of real or personal property, or otherwise; to charge or to receive in advance interest therefor".

This provision gives such institutions authority to lend money upon the security of a mortgage on real estate insured by the Federal Housing Administrator. The evidence of the indebtedness created by the lending is the bond. The mortgage is security for the debt and is an incident thereto.

The section of the act above in part quoted further gives such institutions power:

"(5) To discount, buy, sell, negotiate, or assign promissory notes, drafts, bills of exchange, trade and bank acceptances, stocks, bonds, or other evidences of debt".

Here we have specific authority given to such institutions to buy and sell bonds and other evidences of debt. This would include bonds secured by mortgages insured by the Federal Housing Administrator.

No distinction can be drawn between bonds given to secure a loan made by the institution holding the same and bonds bought from some other holder.

Objection may be raised that section 1013A prohibits an institution from selling one or a number of bonds received as security for a loan of money and secured by a single mortgage insured by the Federal Housing Administrator. Section 1013A provides:

"A. Except as otherwise specifically provided in this act, a bank or a bank and trust company shall not have the power to establish a pool or fund of any bonds secured by mortgages, or of any securities, and to sell to any particular corporations or persons, or to the general public, fractional undivided interests therein."

This section prohibits only the sale of fractional or undivided interests in a pool or fund of bonds secured by mortgages or securities. The evil sought to be corrected by this provision is well known. The sale of one of a number of bonds secured by a single mortgage guaranteed by the Federal Housing Administrator is not the sale of a fractional, undivided interest in a pool or fund of bonds or securities. In the first place, the bonds in question would not constitute a pool or fund within the

meaning of the act. Section 1109 of the act refers to the establishment of a pool or fund of bonds or other securities for trust investments. Such a pool or fund, however, is distinguished from a single bond or mortgage or a single security and this distinction, in our opinion, applies to a number of identical bonds which, together, evidence a single indebtedness. Furthermore, each bond constitutes a separate and distinct obligation. Except with relation to the mortgage securing the bonds, the rights of the holders thereof are distinct.

A further question in this connection arises. Does a bank without trust powers have the power to retain title to the mortgage securing bonds which have been sold and to collect and remit the interest and instalments of principal payable under the terms of the mortgage, hold insurance policies, examine tax receipts, and otherwise service the mortgage? As has been observed, banks do have express power to lend money and take bonds secured by mortgages on real estate as security therefor and to buy and sell such bonds. The debt evidenced by the bonds is the principal thing and the mortgage only incidental to it. Although the bank does not have express power to act as trustee of a mortgage held by it, when such power is essential, though incidental, to the power to buy and sell the bonds secured by the mortgage, it may be inferred or implied. Especially is this so where, as here, we have no express prohibition against the bank continuing to hold and service the mortgage.

In this connection our attention is directed to the requirement that the mortgages, in order to be eligible for insurance, shall have, or be held by, a mortgagee approved by the administrator as responsible and able to service the mortgage properly. This is both a reasonable and proper requirement. The proper servicing of the insured mortgage will without doubt reduce the risk of default and minimize the loss in the event of default. Banks are peculiarly fitted to render services such as are required in handling these mortgages. It is to be expected

that the administrator will insist that the mortgages be held by banks or other institutions having similar experience, facilities and ability to service mortgages. To prohibit a bank from selling bonds and continuing to hold and service the mortgages securing them and to require it to assign all or a part of the mortgages to the assignee of the bond or bonds secured thereby would impede and possibly prohibit the sale of the bonds. Each transaction would necessarily be subject to the approval of the proposed assignee by the administrator. An express grant of an important power is not to be stricken down merely by some inferred prohibition. Incidental power will be implied rather than such prohibition.

Furthermore, it will be observed that when a bond secured by a mortgage or other security is assigned, the assignment carries with it a pro rata interest in the security. The assignor will hold the collateral subject to the interest of the holder of the bond. Whether the relationship is that of trustee and cestui que trust, principal and agent, or some other relationship will depend upon the agreement of the parties as expressed in their contract or implied from the transaction. In the case of the bonds secured by mortgages insured by the Federal Housing Administrator, it is generally understood that the bank holding the mortgage simply holds the mortgage insured to service it as agent for the bondholders and incidental to the business of dealing in the bonds.

The conclusion reached here is not in conflict with Formal Opinion No. 141 heretofore rendered to your department on June 15, 1934, by then Deputy Attorney General Harold D. Saylor [Mortgage Participation Certificate, 21 D. & C. 199]. In that opinion we were considering the sale of participations in mortgages. We are now considering the sale of separate bonds secured by mortgages insured by the Federal Housing Administrator, or for which a commitment to insure has been made under the National Housing Act.

3. The limitation of section 1006A must be considered. This section provides:

"A. A bank or a bank and trust company shall not, directly or indirectly, lend to any corporation or person an amount which, including any extension of credit to such corporation or person by means of letters of credit or by acceptance of drafts for, or the discount or purchase of the notes, bills of exchange, or other commercial paper of, such corporation or person, shall exceed twenty-five per centum of the unimpaired capital and twenty-five per centum of the unimpaired surplus of the bank or bank and trust company. However, this restriction shall have no application whatsoever to the following:

"(1) Loans to the United States, or loans secured by not less than the face amount of bonds or other interest-bearing obligations of the United States, or bonds or other interest-bearing obligations for the payment of the principal and interest on which the faith and credit of the United States is pledged.

"(2) Loans to the Commonwealth of Pennsylvania, or any county or city thereof, or loans secured by bonds or other interest-bearing obligations of the Commonwealth, or of any county or city thereof, or bonds or other interest-bearing obligations for the payment of the principal and interest on which the faith and credit of the Commonwealth, or any county or city thereof, is pledged."

It is apparent that since the mortgages insured prior to July 1, 1937, give to the holder thereof the right to receive debentures guaranteed as to principal and interest by the United States, the bonds that are secured by such a mortgage fall within the exception set forth in subparagraph 1, above quoted, because the full faith and credit of the United States is pledged for the payment of said obligations.

As to bonds not so secured, the limitation applies and a bank or a bank and trust company shall not hold at any time bonds of one person or corporation in excess of the amount permitted by section 1006. The restriction, how-

ever, applies only to the amount due on the bonds actually held by the institution in its own right and would have no application to any bond bought or held for another or bonds which have been sold. Furthermore, debentures which have been received in exchange for defaulted mortgages should not be included in the total.

We, therefore, advise you as follows:

1. That the limitations on the aggregate amount of loans and investments that may be made by a bank or a bank and trust company as set forth in the Pennsylvania Banking Code, as amended, are not applicable to bonds and mortgages which are insured or for which a commitment to insure has been made by the Federal Housing Administrator, pursuant to the provisions of the National Housing Act.

2. That banks or bank and trust companies are permitted to receive a bond or bonds secured by a mortgage insured by, or for which a commitment to insure has been made by the Federal Housing Administrator, and sell one or all of the bonds to other institutions, corporations or individuals and continue to hold the mortgage securing said bond or bonds, and to collect the interest thereon and otherwise service the obligation.

3. The limitations upon loans to one corporation or person, as set forth in section 1006 of the Banking Code do not apply to bonds secured by mortgages insured prior to July 1, 1937. Bonds secured by mortgages insured subsequent to July 1, 1937, are within the limitations expressed in the section.

From Frederic Ray, Harrisburg.